AO 187 (Rev. 7/87) Exhibit and Witness List

# UNITED STATES DISTRICT COURT

| SOUTHERN | DISTRICT OF | ALABAMA |
|---|---|---|

| UNITED STATES OF AMERICA | **EXHIBIT AND WITNESS LIST** |
|---|---|
| V. | |
| JOHN F. MCCARROLL, JR., et al. | Case Number:  1:23-cr-169 |

| PRESIDING JUDGE | GOVERNMENT'S ATTORNEY | DEFENDANT'S ATTORNEY |
|---|---|---|
| Terry F. Moorer | Roller/Ladd | Briskman/Tisdale/Bradford/O'Bannon |
| HEARING DATE | COURT REPORTER | COURTROOM DEPUTY |
| 9/18/24 | Zielie | Boyles |

| GOVT. NO. | DEF. NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS* AND WITNESSES |
|---|---|---|---|---|---|
| 3 | | | | X | 11th CCA Opinion 23-14112 USA v. Pete |
| 4 | | | | X | ATF Forensic Science Laboratory Firearms report |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

* Include a notation as to the location of any exhibit not held with the case file or not available because of size.

[DO NOT PUBLISH]

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 23-14112

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

QUINTON L. PETE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 3:22-cr-00048-TKW-1

_____





GOVERNMENT
EXHIBIT
3
23-cr-169-TFM

2                    Opinion of the Court                    23-14112

Before JILL PRYOR, BRANCH, and BLACK, Circuit Judges.

PER CURIAM:

Quinton L. Pete appeals his convictions for attempted Hobbs Act robbery and possession of a firearm and ammunition by a convicted felon. First, Pete asserts the district court reversibly erred by denying his request for a *Daubert*[1] hearing to test the admissibility of the Government's ballistics toolmark identification evidence and testimony. Second, Pete contends the court reversibly erred by excluding or restricting testimony from his firearms ballistics expert who was qualified to testify on the subject. Third, Pete asserts the court violated his rights under the Confrontation Clause by admitting, over his objection, hearsay testimony that an unidentified, independent toolmark examiner reached the same conclusion as the Government's expert toolmark witness. We address each of his challenges in turn, and after review, affirm his convictions.

## I. *DAUBERT* HEARING

Rule 702 of the Federal Rules of Evidence allows a witness who is qualified as an expert to give testimony so long as:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

---

[1] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

*Id.*  The *Daubert* inquiry provides the district courts, which are much more familiar with the facts and needs of a case, the flexibility "to manage their dockets and counsels' time to provide the most efficient and just resolution of issues."  *Id.*

In *Ware*, prior to trial, the defendant sought to exclude expert testimony regarding fingerprint evidence because new reports, from the National Research Council (NRC) and the President's Council of Advisors on Science and Technology (PCAST), stated that fingerprint analysis was unreliable and susceptible to cognitive biases.  *Id.* at 840.  The district court denied Ware's motion and determined that a hearing under *Daubert* was unnecessary, in part, because he failed to present a case from our Court or another district court in the Circuit that favored excluding fingerprint evidence under *Daubert*.  *Id.*  Ware asserted the district court abused its discretion by admitting the challenged evidence without holding a formal *Daubert* hearing.  *Id.* at 835.  He challenged the reliability of the fingerprint analysis generally, and not the qualifications of the Government's expert or the helpfulness of his testimony.  *Id.* at 846.  This Court held the district court was not required to hold a *Daubert* hearing before admitting the Government's fingerprint expert and did not abuse its discretion in deciding such a hearing was unnecessary.  *Id.* at 847.  Noting the district court had "considered the reports and arguments presented and found that fingerprint evidence was reliable enough as a general matter to be presented to the jury," we reasoned fingerprint evidence has long been accepted in our Circuit and that the cure for questionable, but admissible, evidence is cross-examination, not

> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles
> and methods; and (d) the expert has reliably applied
> the principles and methods to the facts of the case.

Fed. R. Evid. 702 (version effective to November 30, 2023). In this Circuit, scientific expert testimony is admissible if:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*United States v. Ware*, 69 F.4th 830, 845-46 (11th Cir. 2023), *cert. denied*, 144 S. Ct. 1395 (2024) (quotation marks omitted). The party seeking to introduce the expert opinion has the burden of establishing the three prongs: qualification, reliability, and helpfulness. *Id.* at 846. District courts consider four factors within the reliability prong "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community." *Id.* (quotation marks omitted). Courts are not required to hold a *Daubert* hearing in every case where a party challenges the admissibility of expert testimony.

reliability. *Id.* at 847-48. Particularly, FTI evidence continues to be used in federal courts after the PCAST Report and NRC Report criticized the existing studies of its reliability, and Pete did not provide a federal court decision that prohibited FTI evidence based on *Daubert*. Additionally, other courts of appeals have upheld the admissibility of FTI evidence. *See United States v. Hunt*, 63 F.4th 1229, 1249 (10th Cir. 2023); *United States v. Brown*, 973 F.3d 667, 704 (7th Cir. 2020); *United States v. Johnson*, 875 F.3d 1265, 1280-81 (9th Cir. 2017); *United States v. Williams*, 506 F.3d 151,162 (2d Cir. 2007).

In his motion for a *Daubert* hearing and to exclude the Government's FTI evidence, Pete attacked the reliability of FTI broadly and contended it was not credible enough to meet the *Daubert* reliability requirements. The court adequately addressed that argument in analyzing the proposed evidence under each of the *Daubert* considerations. The court found that Andrew Pike was qualified to provide the FTI testimony of his findings because of his training and experience, including his role as a firearms toolmark examiner with Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). It found that Pike's testimony on the connection between the firearm found in Pete's possession and the shell casings found at the scene of the shooting would help the jury, particularly because such information was relevant to the crimes charged and was beyond the expertise of the jury. *See* Fed. R. Evid. 702; *Ware*, 69 F.4th at 845-46. The court's extensive reliability analysis considered the four factors under the reliability prong. *Ware*, 69 F.4th at 846. While acknowledging the critiques, the court found the methodology had been tested, subjected to peer review and publication, and

23-14112                Opinion of the Court                5

exclusion. *Id.* at 847-48. This Court added the PCAST and NRC reports may cast doubt on the error rates of the fingerprint analysis but they go to the weight given to the analysis rather than the legitimacy of the practice. *Id.* at 848.

The district court did not abuse its discretion in denying Pete's request for a *Daubert* hearing regarding the admissibility of the Government's ballistics toolmark identification evidence and testimony. *See Ware*, 69 F.4th at 845 (reviewing the district court's decisions regarding the admissibility of expert testimony, the reliability of an expert opinion, and the denial of a *Daubert* hearing for abuse of discretion). The court held a conference on the issue, permitted the parties to submit any additional documents and arguments on the issue, and decided the issue in a detailed order discussing each of the *Daubert* factors. The court also determined the parties' schedules did not permit time for a *Daubert* hearing prior to trial, and, therefore, the trial would have been pushed back if the court had conducted a *Daubert* hearing. Although *Ware* revolved around the admissibility of fingerprint evidence, the court did not err in relying on *Ware* in deciding whether to hold a *Daubert* hearing, because *Ware* also involved a challenge to the reliability of a commonly used forensic science method. *Ware*, 69 F.4th at 846. In the order, the court looked to *Ware* on the issue, but conducted its own detailed *Daubert* analysis based on the unique facts, evidence, and arguments the parties presented. *Ware* supports the district court's finding that Firearm Toolmark Identification (FTI) evidence is sufficiently reliable to present to the jury and that cross-examination was the proper means to attack the expert testimony's

had a known error rate. The court found the Association of Firearm Toolmark Examiners methodology continued to be generally accepted in the firearm expert community, despite the criticisms raised in the report and studies on which Pete relied.

In sum, the district court did not apply an incorrect legal standard, follow improper procedures in making its determination, or make findings of fact that were clearly erroneous. *See United States v. Harris*, 989 F.3d 908, 911 (11th Cir. 2021) ("A district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous." (quotation marks omitted)). Accordingly, we affirm as to this issue.

## II. LIMITING EXPERT TESTIMONY

*Daubert's* gatekeeping function applies to all expert testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). The helpfulness prong of the *Daubert* analysis looks to whether expert testimony "concerns matters that are beyond the understanding of the average lay person." *United States v. Frazier*, 387 F.3d 1244, 1262 (11th Cir. 2004). Further, "[p]roffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Id.* at 1262-63.

The district court did not abuse its discretion in limiting J. Christopher McKee's expert testimony. The district court followed the *Daubert* analysis, conducted a hearing on the issue, and made reasonable findings that some of McKee's proposed testimony was

8                    Opinion of the Court                    23-14112

beyond his expert scope and some of it was unhelpful to the jury, and therefore, the court did not apply an incorrect legal standard, follow improper procedures in making its determination, or make findings of fact that were clearly erroneous. *See Harris*, 989 F.3d at 911. Additionally, on appeal, Pete asserts new topics on which McKee would have testified that he failed to raise in the district court. Accordingly, we affirm as to this issue.

### III.   CONFRONTATION CLAUSE

We examine whether a statement is testimonial under the Confrontation Clause *de novo*. *United States v. Caraballo*, 595 F.3d 1214, 1226 (11th Cir. 2010). We will excuse a violation of the Confrontation Clause if the error is harmless beyond a reasonable doubt. *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986). Whether error is harmless depends upon numerous factors, including "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and . . . the overall strength of the prosecution's case." *Id.* Further, "[t]o require a new trial . . . [a] significant possibility must exist that, considering the other evidence presented by both the prosecution and the defense, the . . . statement had a substantial impact upon the verdict of the jury." *United States v. Ransfer*, 749 F.3d 914, 927 (11th Cir. 2014) (quotation marks omitted).

Even assuming without deciding that Pete's rights under the Confrontation Clause were violated when Pike testified on redirect

examination that an unidentified, independent toolmark examiner reached the same conclusion as he did, any potential error was harmless beyond a reasonable doubt, because the Government presented substantial evidence of Pete's guilt. The Government's evidence included information extracted from Pete's cellphone that the phone was in the parking lot of the Coyote Sports Bar at the time of the shooting and then traveled west. The phone also showed a google search for "Two Shot Outside of Pensacola Bar" around 5:30 p.m. on the day of the shooting and revealed that two articles on the Coyote Sports Bar shooting were viewed. Pete was also found with the same type of gun and ammunition that was used in the shooting, and he met the general description provided by the victims. There is not a significant possibility that Pike's statement confirming the peer-reviewer's findings at the end of his re-direct examination had a substantial impact on the guilty verdict, such that a new trial should be required. *See Ransfer*, 749 F.3d at 927. Notably, Pete does not challenge any other portion of Pike's testimony as violating the Confrontation Clause, and therefore, the jury properly heard Pike's finding, as an ATF examiner, that the gun found at Pete's arrest was the gun used to shoot the victims. Based on the overall strength of the prosecution's case, any potential Confrontation Clause violation was harmless beyond a reasonable doubt.

Accordingly, we affirm as to this issue.

**AFFIRMED.**

cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

<u>Clerk's Office Phone Numbers</u>

| | | | |
|---|---|---|---|
| General Information: | 404-335-6100 | Attorney Admissions: | 404-335-6122 |
| Case Administration: | 404-335-6135 | Capital Cases: | 404-335-6200 |
| CM/ECF Help Desk: | 404-335-6125 | Cases Set for Oral Argument: | 404-335-6141 |

OPIN-1 Ntc of Issuance of Opinion

## ATF Forensic Science Laboratory
## Firearms Section

**Case/Sub #:** 2023-A-000201 (1)
**Received from:** T. Breeden, Evidence Receiving 9/7/2023
**Returned to:** T. Breeden, Evidence Receiving 10/3/23 SH

**Opening inventory:** 9/7/2023
**Closing inventory[1]:** 9/29/23 SH

**Container:** 23-Cont-A-00403-FE  One (1) sealed (initial/date) FedEx box containing the following:

| Lab # | Agent Exhibit # | Description |
|---|---|---|
| 1 | 1 | One (1) sealed (adhesive flap) plastic bag containing one (1) empty envelope and the following:<br><br>1.1 One (1) sealed (initials) envelope containing:<br><br>One (1) 45 AUTO caliber cartridge case.<br><br>1.2 One (1) sealed (initials) envelope:<br><br>One (1) 45 AUTO caliber cartridge case. |
| 2 | 2 | One (1) sealed (adhesive flap) plastic bag containing one (1) sealed (initials) envelope containing the following:<br><br>2.1 One (1) 45 AUTO caliber cartridge case.<br><br>2.2 One (1) bullet.<br><br>2.3 One (1) bullet jacket. |
| 3 | 3 | One (1) sealed (adhesive flap) plastic bag containing one (1) sealed (initials) envelope containing the following:<br><br>One (1) bullet core. |
| 4 | 4 | One (1) gun box containing the following:<br><br>Glock model 21, 45 AUTO caliber pistol with the serial number BHVY999 and ammunition magazine. |

| | YES | | NO | N/A |
|---|---|---|---|---|
| Does the **OPENING** evidence inventory match that listed on the transmittal document? | ☒YES | ☐NO | | |
| *If NO, has submitter been notified and appropriate notes made?* | ☒YES | ------ | | ☐N/A |
| Was lab generated evidence (test fires/test marks) sealed and returned with the submitted evidence? | ☒YES[1] | ☐NO | | ☐N/A |
| Has unfired ammunition been packaged and boxed separately from the firearm? | ☐YES | ☐NO | | ☒N/A |
| Is all evidence in the **CLOSING** inventory packaged in the original container and properly sealed? | ☒YES | ☐NO | | |

[1]All items including test fires and the test cast (4.1T1-T4, 4.1C1) were packaged in the original packaging and returned to evidence receiving.



ADMITTED
IN 9/05/24
EVIDENCE

**Remarks:**

➢ Laboratory FSL-A received on 7/13/2023

➢ Photos taken during opening inventory were cropped to area of interest.

➢ Confirmed via phone call with Special Agent Finney and with ID Section Chief Clay Allred that the Glock will be Lab #4, and that there will be no "agency exhibit #" listed on the laboratory exam request (LER) form under IN 776040-23-0107 because there cannot be two exhibits on the LER that are the same . This is because it was previously listed as Exhibit #2 in IN 776040-23-0060. (9/7/23 SH)

GOVERNMENT
EXHIBIT
4
23-cr-169-TFM

## Evidence Inventory

**Case #** 2023-A-000201 (1)
**Examiner:** Samara Hunter SH

**Date:** 9/28/23
**Page:** pg. 1 of 17

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

McCARROLL, et al 013344

23-CONT-A-00403-FE as received (SH 9/7/23):



Lab#1 outer plastic packaging front and back (SH 9/7/23):




---

**Evidence Inventory**

| | | |
|---|---|---|
| Case #  2023-A-000201 (1) | Date: | 9/28/23 |
| Examiner:  Samara Hunter | Page: | pg. 2 |

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

McCARROLL, et al 013345

Lab#1 Inner packaging front and back consisting of Lab #1.1, #1.2, and an empty opened envelope (SH 9/7/23):



Lab#1.1 and 1.2  (SH 9/7/23):



(Photo above: 1.2 on left and 1.1 on right)

Lab #2 outer plastic packaging front and back (SH 9/7/23):



---

### Evidence Inventory

| | |
|---|---|
| Case #   2023-A-000201 (1) | Date:   9/28/23 |
| Examiner:   Samara Hunter  *SH* | Page:   pg. 3 |

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER                    McCARROLL, et al 013346

Lab #2 inner packaging front and back(SH 9/7/23):



Lab #2.1, 2.2, and 2.3(SH 9/7/23):



Lab #3 outer plastic packaging front and back (SH 9/7/23):




## Evidence Inventory

| | |
|---|---|
| Case #   2023-A-000201 (1) | Date:   9/28/23 |
| Examiner:   Samara Hunter | Page:   pg. 4 |

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

McCARROLL, et al 013347

Lab #3 inner packaging front and back (SH 9/7/23):



Lab #3 (SH 9/7/23):



Lab #4 outer packaging (SH 9/7/23):



## Evidence Inventory

Case #   2023-A-000201 (1)                                    Date:   9/28/23
Examiner:   Samara Hunter                                     Page:   pg. 5

Lab #4  (SH 9/7/23):





**Evidence Inventory**

| Case # | 2023-A-000201 (1) | Date: | 9/28/23 |
| --- | --- | --- | --- |
| Examiner: | Samara Hunter SH | Page: | pg. 6 |

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER                    McCARROLL, et al 013349

Lab #4 (photos continued) (SH 9/7/23):







Moved laser to side to
view SN on receiver.



This portion of the slide
under the back plate is
worn/gouged.

---

**Evidence Inventory**

| Case # | 2023-A-000201 (1) | Date: | 9/28/23 |
|---|---|---|---|
| Examiner: | Samara Hunter | Page: | pg. 7 |

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER                    McCARROLL, et al 013350

Date:  9/7/2023

| Cartridge Case Worksheet | | | |
|---|---|---|---|
| **Lab #** | 1.1 | 1.2 | 2.1 |
| **Caliber** | 45 Auto | 45 Auto | 45 Auto |
| **Head Stamp** | Ammo Inc | Ammo Inc | Ammo Inc |
| **Primer/Case Material** | Ni/Br | Ni/Br | Ni/Br |
| **Primer Sealant** | none observed/ unremarkable | none observed/ unremarkable | none observed/ unremarkable |
| **Trace** | none visible | none visible | none visible |
| **Cleaning/ Modification** | none | none | none |
| **BF** | Short linear marks and granular impressions | Short linear marks and granular impressions | Short linear marks and granular impressions |
| **FP** | Elliptical | Elliptical | Elliptical |
| **EXT/EJT** | ~3/9 o'clock | ~3/9 o'clock | ~3/9 o'clock |
| **Toolmarks suitable for comparison?** | Yes | Yes | Yes |
| **Examiner's Marks** | Case#, Lab#, Initials – scribed inside mouth | Case#, Lab#, Initials – scribed inside mouth | Case#, Lab#, Initials – scribed inside mouth |
| **Notes** | "1" in black ink written on case wall | "2" written on case wall | "5" written on case wall |
| **Subclass** | Irregular impressions on BF with varying short groups of striations, BF shear mark (formed from two working surfaces), and irregular impressions in firing pin all indicate minimal potential for subclass. | | |

**Cartridge Case Worksheet**

Case #   2023-A-000201 (1)                                                        Date:  9/28/23
Examiner:  Samara Hunter SH                                                Page:   pg. 8

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

McCARROLL, et al 013351

Date:   9/12/2023

| Bullet Worksheet | | | |
|---|---|---|---|
| Lab # | 2.2 | 2.3 | 3 |
| Description | bullet | bullet jacket | bullet core |
| Caliber | .45 caliber class | .45 caliber class | - |
| Diameter | ~.449 | ~.454" | ~.440" |
| Weight | ~230.1 grains | ~35.1 grains | ~189 grains |
| Bullet Style | JHP | JHP | Hollow point (uniform expanding of head of core) |
| Composition | Copper w/ lead grey metal core | Core absent | Core (lead/grey metal) |
| Condition | Nose expanded out and folded backwards w/ some tearing of skives | Skives of jacket expanded out and folded backwards; tearing around skives | Nose area mushroomed/damaged with some gouges |
| Base Style | Closed / flat | Closed / flat | Flat |
| Cannelures | None | None | none |
| Trace | Some fibrous material, red brown stains dried on bearing surface | Some fibrous material, red brown stains dried on bearing surface | Red brown stains/some fibrous material |
| Cleaning | Acetone w/ cotton swab; sonicate w/ water/soap for 5 minutes | Acetone w/ cotton swab | none |
| Modifications | Slight movement of skives that were folded on bearing surface (used parallel pliers and tissue to avoid marking bearing surface) | Slight movement of skives that were folded on bearing surface (used parallel pliers and tissue to avoid marking bearing surface) | none |
| Rifling | 8R | 8R | No secondary rifling visible |
| LEA | poly | poly | n/a |
| GEA | poly | poly | n/a |
| Toolmarks Suitable For Comparison? | Yes | Yes | No |
| Examiner's Marks | Lab #, initial on base scribed | Lab #, initial on base scribed | Lab #, initial on base scribed |
| Subclass | Majority of stria observed do not travel the length of the LEAs or GEAs, they indicate low potential for subclass. One LEA has coarse stria (marked with red dot) that do run parallel along the length of the bearing surface; possible potential for subclass. (examination of barrel that made marks to evaluate further for subclass potential of that LEA) | | |

---

# Bullet Worksheet

Case #   2023-A-000201 (1)              Date:   9/28/23
Examiner:  Samara Hunter  SH            Page:   pg. 9

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER              McCARROLL, et al 013352

Lab # ___4___                                                    Date: __9/12/2023__

## Firearm Worksheet

| Type | Caliber | Make | Model |
|------|---------|------|-------|
| pistol | 45 Auto | Glock | 21 Gen 4 |

| Serial Number | Country/Importer markings | Examiner's Mark | Operating System |
|---------------|---------------------------|-----------------|------------------|
| BHVY999 | "MADE IN AUSTRIA" "GLOCK INC, SMYRNA, GA." *R receiver* | Case#, lab#, initials | short recoil |

| Magazine submitted? | Finish | Firing Mechanism | Action | Trigger |
|---------------------|--------|------------------|--------|---------|
| ☒ Yes ☐ No 13 witness holes "Glock" on bottom | Black matte finish w/ black poly receiver textured grip | striker | semi-automatic | DAO |

| Residue in bore? | BF | FP | GRC | Cylinder Rotation |
|------------------|-----|-----|-----|-------------------|
| Nothing remarkable **Trace?** Nothing remarkable | Parallel/Overall linear marks (6-12 o' clock) with random stopping points throughout. (broach)/ Elliptical aperture | Elliptical/ irregular random contours | 8R | ☐L ☐R ☒n/a |

**Notes**
-Green tape wrapped around grip.
-"P80" back plate - there is wear/gouging that has worn away some of the poly material of the receiver directly under the back plate.
- Laser sight attached to receiver.

| Test Fire # | 4.1T1-T2 | 4.1T3-T4 | Cartridge Case | Bullet |
|-------------|----------|----------|----------------|--------|
| Date | 9/12/23 | 9/22/23 | BF, AP shear, and FP individual characteristics reproduce | Individual characteristics/ stria in LEAs reproduce |
| Ammunition | Federal | Remington | | |
| Primer/Case | Nickel/Brass | Nickel/Brass | | |
| Source | Lab | Lab | | |
| Bullet Diameter | .45 | .45 | | |
| Bullet Base | Flat open | Flat closed | | |
| Bullet Weight | 230 grains | 230 grains | | |
| Bullet Type | FMJ | JHP | | |
| Firing mode | DAO | DAO | | |
| Test Medium | Water tank | Water tank | | |
| Labeling | 4.1T1-4.1T2 in order test fired | 4.1T3-4.1T4 in order test fired | | |
| Disposition | 4.1T1-T4 Sealed in envelope and retained with Lab #4 packaging | | | |

| Cast # | 4.1C1 |
|--------|-------|
| Date | 9/22/23 |
| Type | Barrel cast |
| Labeling | 4.1C1 |
| Disposition | 4.1C1 retained in sealed envelope with 4.1TFs and retained in Lab #4 original packaging |

## Firearm Worksheet

Case #  2023-A-000201 (1)                                          Date: _9/28/23_
Examiner: Samara Hunter  *SH*                                      Page: _pg. 10_

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER                    McCARROLL, et al 013353

Caliber:  45 AUTO

| Cartridge Case Comparison | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Date** | **Comparison** | **Result** | **Class** | **Individual** | **Notes** | | | | | | |
| | | | | | BF | FP | EJT | EXT | CHM | BELM | OTHER |
| 9/7/23 | 1.1 to 1.2 | ID | Agree[1] | Agree | 2 | 3 | - | - | - | - | - |
| 9/7/23 | 1.1 to 2.1 | ID | Agree[1] | Agree | 2 | 3 | - | - | - | - | - |
| 9/12/23 | 1.1 to 4.1 | ID | Agree[1] | Agree | 2 | 3 | - | - | - | - | - |

**Notes:**

[1] Elliptical FP aperture

[2] Sufficient agreement of striations along the shear mark on the aperture edge. Sufficient agreement of stria along the shear mark.

[3] Sufficient agreement of irregular contours impressed in the firing pin.

**Photos:**



23A201 1.1 to 1.2 AP shear 14x SH 9.7.23



23A201 1.1 to 1.2 FP 14x SH 9.7.23

---

## Cartridge Case Comparison

Case #  2023-A-000201 (1)                                Date:  9/28/23
Examiner:  Samara Hunter  *SH*                          Page:  pg. 11

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER                McCARROLL, et al 013354





## Cartridge Case Comparison

| Case # | 2023-A-000201 (1) | | Date: | 9/28/23 |
| Examiner: | Samara Hunter | | Page: | pg. 12 |

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

McCARROLL, et al 013355

**Caliber Class:** .45 caliber class

| Bullet Comparison | | | | | |
|---|---|---|---|---|---|
| **Date** | **Exhibits** | | **Result** | **Class** | **Individual** |
| 9/12/23 | 2.2 to 2.3 | | ID | Agree[1] | Agree[2] |
| 9/12/23 - 9/22/23 | 2.2 to 4.1 | | ID | Agree[1] | Agree[2] |
| 9/12/23 - 9/22/23 | 2.3 to 4.1 | | ID | Agree[1] | Agree[2] |

**Notes:**

[1] Polygonal/8R

[2] Sufficient agreement of striations in LEAs

**Photos:**



21A203 2.2 v 2.3 LEA red dot 22x SH 9-12-23



23A201 2.2 to 4.1T3 11x 9/22/23

## Bullet Comparison

Case # 2023-A-000201 (1)    Date: 9/28/23
Examiner: Samara Hunter    Page: pg. 13

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER    McCARROLL, et al 013356





**Bullet Comparison**

Case #   2023-A-000201 (1)                                    Date:   9/28/23
Examiner:  Samara Hunter                                      Page:   pg. 14

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER                    McCARROLL, et al 013357





**Bullet Comparison**

Case #   2023-A-000201 (1)                                    Date:  9/28/23
Examiner:  Samara Hunter                                      Page:  pg. 15

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER                    McCARROLL, et al 013358

**Barrel Subclass Assessment:**



Glock hammer forges their barrel in-house with custom mandrels. Hammer forging does not remove previous transverse/irregular marks from the inside of the bore due to the reaming and drilling process, but instead, this process presses them into the mandrel shape. This irregular topography will still be on the lands and grooves of the rifling and will come in contact with the bearing surface of the bullet. Cast 4.1C1 shows irregular topography throughout the lands and grooves, with overlapping crosshatching of linear marks. A cast of the barrel from Lab 4 was made in order to assess for subclass characteristics by comparing rifling marks from the cast to the fired bullets from Lab #4. There were random irregular markings and light crosshatching marks on the lands and groove impressed areas on the cast. There is minimal potential for subclass because the striations on the bullets bearing surface are formed from the summation of the irregular topography inside the barrel.

**BF Subclass Assessment:**



The breechface of Lab 4 has some faint linear marks and chip formation (broach cut) and granular texture from finishing processes such as tumbling. The shear mark on the fired cartridge cases from Lab 4 is produced by the two working surfaces at the 6 o'clock portion of the firing pin aperture edge. The primer of the cartridge flows back into the firing pin aperture, and as the breech unlocks, the cartridge case will shift down slightly, causing the 6 o'clock edge of the firing pin aperture to shear the flowback area of the primer near the firing pin impression. This edge of the firing pin aperture has an irregular topography where two different working surfaces meet, removing the potential for subclass. The BF has numerous granular irregularities from chip formation and finish processes, minimizing potential for subclass.

**FP Subclass Assessment:**

This firing pin has irregular contours/ impressions that could be from additional finishing methods such as tumbling. It also could be from use and wear over time. These random defects indicates that the potential for subclass carryover is minimal.

## Subclass Assessment

| | | |
|---|---|---|
| Case #  2023-A-000201 (1) | | Date:  9/28/23 |
| Examiner:  Samara Hunter | | Page:  pg. 16 |

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER    McCARROLL, et al 013359

Start date: **9/28/2023**

| | | Verification | | |
|---|---|---|---|---|
| **Exhibits Compared** | **Class Agreement** | **Individual Agreement** | **Conclusion** | **Examination Notes** |
| 1.1, 1.2, 2.1/ 4.1T3,4 | Y | Y | ID | Agreement of IC in PS and BFM |
| 2.2, 2.3/ 4.1T2-4 | Y | Y | ID | Agreement of IC in LIMP, GIMP |

Verification via microscopic comparison, visual/physical - VJK 4/29/24

| | | |
|---|---|---|
| **VERIFICATION WORKSHEET** | | |
| Lab Number: <u>2023-A-000201</u> | | Date: <u>9/28/2023</u> |
| Verifying Examiner: <u>V. Kelley</u>  VJK | | Page: <u>pg. 17</u> |

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

McCARROLL, et al 013360