# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIM. NO. 23-00169-TFM-MU |
| ) | |
| JOHN FITZGERALD ) | |
| MCCARROLL, JR., *et al.* ) | |

## UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT MCCARROLL'S ORAL REQUEST TO COMPEL TESTIMONY

The Constitution protects citizens from compelled testimony that may incriminate them. Although a person waives that protection when he pleads guilty to an offense, that waiver pertains only to the offense at issue. It is not a general waiver of the privilege. John Fitzgerald McCarroll, Jr. ("McCarroll") asks this Court to compel Barron Morris ("Morris") to testify in this case over Morris's assertion of privilege. Morris made a valid assertion of privilege. Accordingly, the United States of America, by and through United States Attorney Sean P. Costello, respectfully asks this Court to decline to compel Morris's testimony.

**I.    Background**

A superseding indictment charged McCarroll and other codefendants with a series of crimes connected to a conspiracy to commit a murder for hire. [Doc. 225]. McCarroll and two codefendants proceeded to trial, and a jury has heard evidence in the case over multiple weeks. In short, the United States' theory is that McCarroll

1

ordered the killing of Milton Carter ("Carter") as a response to the death of Ryan Campbell ("Campbell"). The United States asserts that McCarroll blamed Carter for Campbell's death. Although McCarroll did not kill Carter, the United States has presented evidence that has connected McCarroll to a string of unsuccessful attacks that harmed other victims while Carter remained unscathed.

As part of his defense, McCarroll sought to call Morris to testify as a witness. McCarroll's counsel began to examine Morris outside the jury's presence, and Morris asserted a claim of privilege under the Fifth Amendment. Although McCarroll briefly continued to question Morris, the Court ultimately stopped the process. McCarroll asked the Court to compel the testimony on the ground that Morris is under subpoena and has pleaded guilty to various charges in Alabama state court.

If Morris were to testify, the United States anticipates that Morris would testify that he shot and killed Campbell. In addition, the United States expects that Morris would claim that Carter had no connection to Campbell's murder. The United States would be entitled to cross-examine Morris on these points.

The Court asked the United States to submit a responsive memorandum that addresses the Fifth Amendment issue. This is the United States' response.

## II.   Legal Standards

The Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself[.]" U.S. Const. Amend. V. This clause

"protects a witness against the infliction of criminal penalties on the basis of compelled, testimonial self-incrimination." *United States v. Gecas*, 120 F.3d 1419, 1428 (11th Cir. 1997) (*en banc*). Among other protections, "courts can prevent the infliction of criminal penalties based on compelled, testimonial self-incrimination by refusing to force witnesses to testify against their own penal interest." *Id.* at 1429. As the *Gecas* Court went on to explain, "[w]hen a court considers a motion to compel testimony, it acts as a court of equity, balancing the risk of a violation of the Self-Incrimination Clause against the Government's right to the evidence of every citizen." *Id.*

### III. Discussion

Morris made a valid assertion of his Fifth Amendment right against self-incrimination. Although Morris pleaded guilty to a state murder charge in connection with Campbell's death, that guilty plea constitutes only a limited waiver of the Fifth Amendment's protections. Morris could testify in numerous ways that would subject him to further criminal exposure.

At a basic level, a defendant waives his Fifth Amendment privilege when he pleads guilty to an offense. *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984) ("A plea of guilty is a waiver of several constitutional rights, including the [F]ifth [A]mendment privilege against compulsory self-incrimination and the [S]ixth [A]mendment rights to insist on a jury trial and to confront one's accusers."). Precedent makes clear, however, "that a plea of guilty waives the right against self-incrimination

3

only as to matters which might incriminate the defendant of the particular crime to which the plea is made." *United States v. Fortin*, 685 F.2d 1297, 1298 (11th Cir. 1982). The *Fortin* Court emphasized that the law was "clear" on this point and that the United States "concede[d]" it in defendants' appeals of criminal contempt proceedings grounded in a refusal to testify. *Id.* at 1297–98. As the Court went on to explain, a defendant's plea "does not constitute a waiver with respect to information which could subject the defendant to a separate prosecution." *Id.* at 1298.

The defendants in *Fortin* argued that their testimony "even if truthful, would necessarily have contradicted one or the other of their prior sworn statements[,]" thus opening the door to potential perjury prosecutions. *Id.* The Court reversed the defendants' contempt convictions. *Id.* at 1299.

*Fortin* does not stand alone. Subsequently, the Eleventh Circuit concluded that a defendant retains a Fifth Amendment privilege prior to sentencing following a guilty plea. *United States v. Kuku*, 129 F.3d 1435, 1438 (11th Cir. 1997). The *Kuku* Court concluded that the district court properly allowed a witness to invoke his Fifth Amendment privilege after he pleaded guilty but before he was sentenced. *Id.* at 1437–38. The *Kuku* Court observed that the compelled testimony could affect the witness' sentence and noted that "the prospect of [the witness] incriminating himself in a separate crime if compelled testimony permits him to invoke the Fifth Amendment privilege" as well. *Id.* at 1438. Likewise, a panel of the former Fifth Circuit recognized

4

that a guilty plea does not amount to an outright waiver of the Fifth Amendment privilege. *In re Bryan*, 645 F.2d 331, 333 (5th Cir. Unit B May 18, 1981); *see also Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*) (treating decisions from the Fifth Circuit as binding if handed down prior to the close of business on September 30, 1981).

Taken together, these cases illustrate that an individual has a valid Fifth Amendment privilege against testimony that could implicate the defendant in further activity. In that vein, an individual's actions also may violate the laws of different sovereigns. *Heath v. Alabama*, 474 U.S. 82, 88 (1985) ("When a defendant in a single act violates the peace and dignity of two sovereigns by breaking the laws of each, he has committed two distinct offences." (internal quotation marks omitted)); *see also Denezpi v. United States*, 596 U.S. 591, 597–99 (2022) (discussing the history behind dual sovereignty).

Although McCarroll contends that he would proceed with a limited examination of Morris, the United States would be entitled to cross-examine him. Morris's answers readily could implicate him in federal criminal activity. For example, the United States would be entitled to examine Morris on his history of drug use to probe his ability to recall the events that surrounded the shooting. An admission to illegal drug use at that time could subject Morris to criminal prosecution for unlawful possession of firearms at that time. *See* 18 U.S.C. § 922(g)(3) (prohibiting firearm possession for unlawful drug

users and addicts). The characteristics of any guns that Morris possessed could lead to criminal prosecution. *See, e.g., id.* at § 922(o) (prohibiting the unlawful transfer or possession of a machinegun, subject to certain exceptions). Moreover, the United States could ask Morris about any payment that he received in connection with the killing. If Morris received compensation, his answers could lead to charges similar to the charges that McCarroll and his codefendants face in this case.

Of course, the Court may impose reasonable limits on cross-examination. *See United States v. Barham*, 625 F.2d 1221, 1225 (5th Cir. 1980) ("Limitations on the scope of cross-examination are within the discretion of the trial court."). In this case, though, any questioning of Morris would implicate potential privilege concerns because Morris's testimony about his conduct at the time of the murder could subject him to federal prosecution, not to mention any potential uncharged state offenses to which his cross-examination answers may expose him. In addition, Morris chose to invoke his privilege against self-incrimination, and this Court should decline to disturb Morris's exercise of that right when he had a valid basis to do so. *See United States v. Goodwin*, 625 F.2d 693, 700 (5th Cir. 1980) ("A valid assertion of the witness' Fifth Amendment rights justifies a refusal to testify despite the defendant's Sixth Amendment rights.").

Nor should McCarroll be permitted to call Morris to the stand simply to have him invoke his Fifth Amendment privilege in front of the jury. Indeed, for more than 50 years, Eleventh Circuit law has prohibited criminal defendants from calling a witness

who intends to invoke the Fifth Amendment privilege within the jury's presence because doing so would invite the jury to draw an improper inference. *See, e.g.*, *United States v. Lacouture*, 495 F.2d 1237, 1240 (5th Cir. 1974); *United States v. Bowman*, 636 F.2d 1003, 1007 (5th Cir. 1981); *United States v. Feliciano-Francisco*, 701 F. App'x 808, 813 (11th Cir. 2017) (unpublished).

To sum up, McCarroll seeks to compel testimony, and he has not carried his burden to demonstrate that this Court should exercise that power here. On the contrary, the Court should accept Morris's invocation of privilege.

## IV. Conclusion

As set out, this Court should decline to compel Morris to testify over his assertion of privilege.

Respectfully submitted,

SEAN P. COSTELLO
UNITED STATES ATTORNEY
By:

*/s/ Scott A. Gray*
Scott A. Gray
Justin D. Roller
S. Gaillard Ladd
Assistant United States Attorneys
63 South Royal Street, Suite 600
Mobile, Alabama 36602
Telephone: (251) 441-5845
Fax: (251) 441-5131
